UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PATRICK G. WELCH                                    CIVIL ACTION
*On behalf of himself and others*
*similarly situated*

VERSUS                                              No. 07-2711

ATLAS ROOFING CORPORATION                           SECTION:  I/4

ORDER AND REASONS

Before the Court is a motion for class certification filed by plaintiff, Patrick G. Welch ("Welch"), on behalf of himself and others similarly situated.  For the following reasons, plaintiff's motion is **DENIED**.

*BACKGROUND*

Defendant, Atlas Roofing Corporation ("Atlas"), is a leading manufacturer of residential and commercial asphalt roofing shingles.[1]  A key component of Atlas's shingles is a material known as "headlap granules."[2]  At all times pertinent to this case, the headlap granules incorporated into Atlas's shingles were purchased from a single supplier, McCabe Minerals.[3]

In June, 2003, Welch replaced the roof on his home with

---

[1]Rec. Doc. No. 22, p. 3.  Atlas's shingles are distributed under the brand names Pinnacle, Glassmaster, Alpine, Summit, and Legend.  Rec. Doc. No. 13-3, p. 2.

[2]*Id.* at p. 1.  Generally, headlap granules comprise the outer surface of asphalt roofing shingles.  *Id.*

[3]Rec. Doc. No. 22, p. 3; *see also* Rec. Doc. No. 13-3, p. 1.

shingles that Welch alleges were designed, manufactured, marketed, and sold by Atlas.[4]   Subsequent to replacing his roof, Welch noticed that his shingles were rusting, causing the side of his home and areas surrounding his home to stain as a rust color.[5]

Welch styles his complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  On behalf of himself and others similarly situated, Welch asserts that Atlas designed and manufactured its roofing shingles in a manner that rendered the shingles completely useless for their intended purpose.[6] Specifically, Welch alleges that the McCabe headlap granules incorporated into Atlas's shingles contained excessive amounts of metal which caused the shingles to rust and break down prematurely.[7] As a result of Atlas's chosen design and method of manufacture, Welch asserts a redhibition claim under Louisiana law on behalf of the putative class members for the following: (1) return of the purchase price of the roofing shingles together with interest from the time the purchase price was paid; (2) reasonable expenses occasioned by the sale; (3) damages caused by use of the

---

[4]Rec. Doc. No. 1-4, p. 3, paras. 11-12.

[5]*Id.* para. 13.

[6]*Id.* para. 9.  Welch alleges the defect in Atlas's shingles that caused them to be totally useless existed at the time the shingles were purchased and installed.  *Id.* para. 10.

[7]*Id.*  Welch contends that Atlas's shingles are defective because they contain headlap granules with excessive amounts of metal.  Rec. Doc. No. 1-4, p. 3, para. 9.

defective shingles, including, but not limited to, the expense incurred in attempted repairs and the cost of preserving the shingles; and (4) reasonable attorney fees.[8]

On September 7, 2007, Welch filed this motion for class certification pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.[9]  Welch's proposed class is defined as "all persons and entities who were domiciled in Louisiana, and who are end purchasers of Pinnacle, Glassmaster, Alpine, Summit and/or Legend brand roofing shingles which were manufactured by Atlas Roofing Corporation between January 1, 2002 and December 31, 2004. The class excludes distributors and retailers of these Atlas shingles and contractors and builders who were not end purchasers of these Atlas shingles."[10]

### LAW AND ANALYSIS

A. *Standard of Review*

The proponents of a class bear the burden of demonstrating

---

[8]*Id.*  Welch asserts two theories of liability in his complaint.  He first argues that Atlas is liable to the putative class members because of the redhibitory defects in the shingles.  *Id.* para. 7.  Specifically, Welch alleges that Atlas is liable to the putative class members pursuant to Articles 2531 and 2545 of the Louisiana Civil Code.  *Id.*
        *Alternatively*, Welch argues that Atlas is also liable to the putative class members pursuant to the Louisiana Products Liability Act.  *Id.* (emphasis added). In his motion to certify the putative class, however, Welch only discusses class certification pursuant to his redhibition claim.  Rec. Doc. No. 13-3.  Welch's complaint also excludes from the class any claims for personal injury.  Rec. Doc. 1-4, p. 2, para. 7.
        Subsequent to Welch filing his complaint, the Court, without objection, dismissed Welch's LPLA claims.  Rec. Doc. No. 36.

[9]Rec. Doc. No. 13.

[10]Rec. Doc. No. 13-3, p. 5.

3

that the case is proper for certification.  *Turner v. Murphy Oil*, 234 F.R.D. 597, 603 (E.D. La. 2006) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001)).  U.S. District courts are granted sound discretion when certifying classes, as such a decision is essentially a factual inquiry. *Vizena v. Union Pac. R.R.*, 360 F.3d 496, 502-03 (5th Cir. 2004). In determining whether to certify a class, the district court should not reach the merits of plaintiffs' claims.  *Turner*, 234 F.R.D. at 603.  However, it is often necessary for the district court to look beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in order to make meaningful certification decisions.  *Id.*  "The district court must make findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *Id.*

**B.   *Rule 23(a) Requirements***

When certifying a class action, the Court must find that the putative class meets the requirements of Rule 23(a).  This initial subsection requires that the class demonstrate:  (1) numerosity, *i.e.*, that the class is so numerous that joinder of all members is impracticable; (2) commonality, *i.e.*, that there are questions of law or fact common to the class; (3) typicality, *i.e.*, that the claims and defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy, *i.e.*, that

4

the representative parties fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *see James v. City of Dallas*, 254 F.3d 551, 569 (5th Cir. 2001) (citing *Washington v. CSC Credit Servs., Inc*., 199 F.3d 263, 265 (5th Cir. 2000)).

### 1. *Numerosity*

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1). No definite standard has been established as to what size class satisfies the numerosity requirement.  *Garcia v. Gloor*, 618 F. 2d 264, 267 (5th Cir. 1980) (No arbitrary rules have been established in order to determine numerosity); *Street v. Diamond Offshore*, 2001 WL 56811, at *4 (E.D. La. May 25, 2001) (Although the number of members in a proposed class is not determinative of whether joinder is impracticable, it has been noted that any class of more than forty (40) members should raise a presumption that joinder is impracticable).  To satisfy the numerosity requirement, plaintiffs must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members.  *James*, 254 F.3d at 570.

Welch estimates that, during the relevant time period, Atlas manufactured and sold enough defective shingles to roof more than seventy-five thousand (75,000) average size homes in Louisiana, Texas, and Oklahoma.[11]  According to Welch, Louisiana consumers comprise a substantial portion of the end purchasers of Atlas's

---

[11]Rec. Doc. No. 13-3, pp. 8-9.

allegedly defective shingles and said consumers, therefore, satisfy the numerosity requirement necessary to certify a Louisiana class.[12] Even assuming that all of these shingles were not defective, the Court finds that the number of potentially defective shingles sold in Louisiana creates a pool of potential class members sufficient to meet the numerosity requirement of Rule 23(a)(1).[13]

### 2. *Commonality*

Rule 23(a)(2) requires that there be questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  In order to demonstrate commonality, a plaintiff must show that there is one common question of law or fact.  *James*, 254 F.3d at 570.  "The interests and claims of the various plaintiffs need not be identical.  Rather, the commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'"  *Id*. (quoting *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993)).  The test for commonality is not demanding.  Id.; *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999);

---

[12]*Id.*  Welch offers evidence that an overwhelming majority of the defective shingle claims made to Atlas have been submitted by Louisiana consumers.  *Id*. at p. 9, n.18; Rec. Doc. Nos. 13-21 to 13-26 & 13-27 (Exhibits 1-5, 13).

[13]This case presents a fact pattern similar to that presented to the Court in *Hilton v. Atlas Roofing Corp.*, 2006 WL 3524295 (E.D. La. Dec. 5, 2006).  In *Hilton*, this Court found that, based on plaintiff's allegation that Atlas distributed enough defective shingles to roof ninety thousand (90,000) homes, the numerosity requirement was satisfied despite the possibility that not all shingles were defective.  *Id*. at *2.  The Court finds that the same logic applies in this case.

*Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986) ("The threshold of 'commonality' is not high."). The necessity for resolving somewhat complex individual issues does not supply a basis for concluding that plaintiff has not met the commonality requirement. *James*, 254 F.3d at 570.

Welch alleges that the members of the putative class in this case share common questions of fact and law. He asserts that the issues of fact common to each class member include: (1) whether Welch and each class member purchased shingles which contain excessive metal; (2) whether Welch and each class member had Pinnacle, GlassMaster, Alpine, Summit and/or Legend brand name shingles, manufactured by Atlas between January 1, 2002, and December 31, 2004, installed on their residence or business; (3) whether Welch and the class members have suffered damages as a result of the redhibitory defects in the shingles; and (4) whether Welch and the class members would not have purchased the shingles had they known of the redhibitory defects.[14]

Several questions of law that Welch asserts are common to the class include: (1) whether the shingles contain a redhibitory defect under Louisiana law; (2) whether the defects in the shingles render the shingles useless; (3) whether Welch and the class members are entitled to a rescission of the shingle sales; (4) whether Welch and the class members are entitled to a reduction of

---

[14]Rec. Doc. No. 13-3 (list is not exhaustive).

the purchase price; and (5) whether the defects existed at the time the shingles were delivered.[15]

While it is possible that not all of the issues of fact and law previously listed are common to Welch and the class members, the Court finds that, at the very least, the issue of whether the shingles contain a redhibitory defect under Louisiana law is common to Welch and the class members.  Considering the fact that the threshold for commonality is not high and that the class members' claims need not be identical, the Court finds that the commonality requirement is satisfied in this case.

### 3. *Typicality*

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Like commonality, the test for typicality is not demanding.  It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen*, 186 F.3d at 625.

"If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James*, 254 F.3d at 571.  However, there are instances when courts have expressed reservations about finding typicality where the named plaintiffs and the putative class members share

---

[15]Rec. Doc. No. 13-3, p. 11.  The list contained in the text does not provide all questions of law proffered by Welch.

similar facts and assert common legal theories of recovery.  *In re Masonite Corp. Hardboard Siding Products Liability Litigation*, 170 F.R.D. 417, 420 (E.D. La. 1997) (Court expressed reservations regarding typicality based on, among other things, the fact that all of the products at issue in that case did not exhibit problems).  Additionally, courts have found that typicality *is not* satisfied where plaintiffs' claims and defenses will be dominated by individual evidence.  *Martin v. home Depot U.S.A.,* Inc., 225 F.R.D. 198, 201 (W.D. Tex. 2004); *see also Johnson v. Kansas City S. Railway Co.*, 208 Fed. Appx. 292, 297 (5th Cir. 2006) (Typicality was not satisfied where the issues before the Court were far too individualized).

Welch alleges that he and the putative class members have causes of action against Atlas for redhibition as a result of Atlas designing, manufacturing, and distributing defective roofing shingles.  Although the Court previously found typicality in *Hilton* based on similar facts, the Court, after reviewing the memoranda filed in this case and case law, is concerned that typicality may not be satisfied in *this* case.

For example, as was the case in *Masonite*, the evidence indicates that the defect alleged by Welch may not be present in all Atlas shingles produced during the pertinent times.[16]

---

[16]Roger Reeves, vice president and chief procurement officer with Hood Companies, Inc., which owns stock in Atlas, testified that some roofs may have had only one shingle with the affected metal granules.  Rec. Doc. No. 22-2, p.

Nevertheless, considering the Court's findings with respect to predominance and superiority, the Court need not determine whether the typicality requirement has been satisfied.[17]

### 4.  *Adequate Protection*

The final requirement of Rule 23(a) is that the representative parties fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).  The adequacy requirement "encompasses class representatives, their counsel, and the relationship between the two." *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002) (quoting *Berger*, 257 F.3d at 479).  The test for adequacy requires an inquiry into the competence and zeal of Welch's counsel as well as Welch's ability to control the litigation, take an active role in it, and protect the interests of the absent class members. *Berger*, 257 F.3d at 480.  "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 625-26.

The Court expresses concern regarding Welch's representation of the putative class.  Although Louisiana's redhibition law entitles the purchaser of a defective product to either a

---

21, ll. 3-10 ("Some of them had one shingle that might have rusted, and some of them might have had two or three dozen that we've had rust streaks"); *see also* Rec. Doc. No. 22-2, p. 28, ll. 10-14 (Some shingles would have one speck of metal in an entire shingle; some would have 10 or 12).

[17]*See* Section C, *infra*.

10

rescission of the sale or a reduction in the purchase price, Welch only discusses the putative class's potential claims for rescission.[18]

Courts have held that a class representative is inadequate when he abandons particular remedies to the detriment of the class. *See, e.g., W. States Wholesale*, *Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002); *see also Ardoin v. Stine Lumber Co.*, 220 F.R.D. 459, 466 (W.D. La. 2004). Welch does appear to have a sufficient stake in this action and the Court cannot state at this point that his interest is antagonistic to the unnamed class members; however, Welch's failure to address reduction as an available remedy in redhibition claims raises a question as to Welch's adequacy as a class representative and whether Welch recognizes the possible disparities in the claims.[19] Regardless, in light of its findings with respect to predominance and superiority, the Court need not determine the adequacy issue.[20]

---

[18]La. Civ. Code. Ann. art. 2520. The availability of a remedy depends on the severity of the defect. *Id.* Welch claims that this is a rescission of the sale case for all putative class members. Rec. Doc. No. 31, p. 10.

[19]Welch fails to analyze how the class may be maintained should the Court determine that reduction is a proper remedy. Welch argues that it cannot be reasonably presumed that the putative class members would have purchased the allegedly defective shingles at a lower price. Rec. Doc. no. 31, p. 10.

[20]*See* Section C, *infra*; *see also Masonite*, 170 F.R.D. at 420 (The Court stated that it need not reach a decision concerning plaintiff's adequacy as a representative because plaintiff failed to satisfy Rule 23(b)(3)).
The Court further notes that Welch explicitly waives any personal injury claims that may be associated with this class action, which in past cases has resulted in a denial of certification based on inadequacy. *See, e.g., W. States Wholesale*, 206 F.R.D. at 277; *Ardoin*, 220 F.R.D. at 466; *Martin*, 225 F.R.D. at 203. However, the Court does not find it necessary to determine whether Welch's waiver precludes him from being an adequate representative because of the Court's

## C.   *Rule 23(b) Requirement*

In addition to the Rule 23(a) requirements, the Court must also determine whether this action fits within Rule 23(b)(3).[21] Rule 23(b)(3) states in pertinent part that questions of law or fact common to the members of the class must predominate over any questions affecting only individual members, and that a class action must be superior to other available methods for the fair and efficient adjudication of the controversy.   Fed. R. Civ. P. 23(b)(3). "In order to predominate, common issues must form a significant part of individual cases." *Turner*, 234 F.R.D. at 606 (citing *Mullen*, 186 F.3d at 626).   The district court should focus on how the class action would proceed at trial and whether any cases would require individual trials on particular issues.   *Id.*

### 1.   *Predominance*

Rule 23(b)(3) requires a plaintiff to demonstrate that questions common to the class members predominate over question affecting only individual members.   "By inquiring into predominance, Rule 23(b)(3) . . . tests 'whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294,

---

findings with respect to predominance and because the Court is hard-pressed to identify a personal injury that could be caused by the alleged defect.   It appears that any personal injury would result installation of the shingles and not from the defect itself.

[21]*See* Rule 23(b)(3) of the Federal Rules of Civil Procedure.

301 (5th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 2245, 138 L. Ed. 2d 689 (1997)). "The standard for certification imposed by Rule 23(b)(3) is . . . more demanding than the commonality requirement . . . and mandates caution, particularly where 'individual stakes are high and disparities among class members [are] great.'" *Id.* at 301-02 (quoting *Amchem*, 117 S.Ct. at 2250).

### a. *Louisiana Redhibitory Defect Claims*

In order to be successful in a redhibition lawsuit, "plaintiff must prove that the thing contained a redhibitory defect, that the defect existed at the time of the sale, and that the defect could not have been discovered by ordinary inspection." *Millspaw v. Knight*, 430 So. 2d 1207, 1208 (La. App. 1 Cir. 1983); *see also Rey v. Cuccia*, 298 So. 2d 840, 843 (La. 1974) ("The buyer must prove that the defect existed before the sale was made to him"); *Dougherty v. Petrere*, 123 So. 2d 60, 63 (La. 1960) ("Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices"). Article 2520 of the Louisiana Civil Code explains that a defect is redhibitory if it either renders a product useless or if it diminishes the usefulness of the product. La. Civ. Code Ann. art. 2520.

The available remedy in a redhibitory defect claim relates directly to whether the product containing the defect is rendered

13

completely useless or whether the product's usefulness is simply diminished. *Id; see also David v. Thibodeaux*, 916 So. 2d 214, 217 (La. App. 1 Cir. 2005) (Explaining when a purchaser of a product is entitled to rescission of the sale and when a purchaser is entitled to only a reduction of the purchase price). If a defect renders a product useless or the product's use so inconvenient that it must be presumed that the purchaser would not have bought the thing had he known of the defect, the purchaser is entitled to a rescission of the sale. La. Civ. Code Ann. art. 2520; *David*, 916 So. 2d at 217.[22] Should the defect diminish a product's usefulness, the purchaser is entitled only to a reduction of the purchase price. *Id* .[23]

Welch asserts that all elements necessary to support a redhibition claim are common to the putative class members and have been satisfied.[24] Welch further asserts, based on Welch's

---

[22]As previously stated, Welch specifically argues in his reply memorandum that this case is "clearly a rescission of the sale case." Rec. Doc. No. 31, p. 10.

[23]Welch argues that it cannot be reasonably presumed in this case that the putative class members would have purchased the allegedly defective shingles at a lower price. *Id.*

[24]Welch argues that the following are issues common to the class and establish a class-wide claim for redhibition: (1) Atlas manufactured millions of defective shingles that were purchased by the putative class members; (2) the shingles Atlas manufactured and sold to the putative class members are defective in that they contain excessive amounts of metal; (3) the defective shingles are so useless that the putative class members would not have purchased the shingles had they known of the defects; (4) Atlas knew, or should have known, that the defective shingles contained excessive metal at the time they left Atlas's control; and (5) the defective shingles that were manufactured, marketed, and sold by Atlas have resulted in the same or similar type of damage to every putative class member. Rec. Doc. No. 31, p. 2.

appreciation of the evidence,[25] that the alleged defect in Atlas's shingles rendered all shingles sold during the pertinent times useless and their use so inconvenient that no buyer would have purchased these shingles had they known of the defect.[26]  As such, Welch argues that he and the members of the putative class are entitled to a return of the purchase price paid for the shingles, interest thereon from the time the price was paid, attorney's fees, and damages.[27]

When analyzing Welch's arguments concerning the predominance of common issues of law and fact and the superiority of a class action, the Court is bound to consider how a trial in this matter would proceed.  *Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, 425 (5th Cir. 2004) (citing *Castano*, 84 F.3d at 752).

_____

[25]Subject to objections to Hilton classifying Atlas's shingles as defective, Atlas responded to interrogatories in *Hilton v. Atlas Roofing* by stating that it produced 2.7 million shingles during the times pertinent to that case.  Rec. Doc. No. 31-11.  "The headlap granules were defective and not fit to be used for incorporation into asphalt roof shingles to be placed on homes."  Rec. Doc. No. 13-9, p. 5, para. 24.  "You're going to have a problem if you've got metal anywhere in the shingle."  Rec. Doc. No. 31-2, p. 33, ll. 13-15.

[26]Rec. Doc. No. 31, p. 10.

[27]Rec. Doc. No. 1-4, p. 3, paras. 11-12.  Welch bases his claims for interest, expenses, attorney's fees, and damages on Louisiana Civil Code Articles 2531 & 2545.  Article 2531 provides that, "a seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect.  If he is unable or fails so to do, he is then bound to return the price to the buyer with interest thereon from the time it was paid, and to reimburse him for reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing . . . ."

Article 2545 provides that a seller who knows that the thing he sells has a defect but omits to declare it is liable to the purchaser for reimbursement of the reasonable expenses occasioned by the sale, for damages, and for reasonable attorney's fees.  La. Civ. Code Ann. art. 2545.  Article 2545 further provides that if the seller of a defective thing is the manufacturer, the seller is deemed to know of the defect.  *Id.*

"District courts are required to take a close look at the parties' claims and evidence in making [their] Rule 23 decision." *Unger v. Amedisys, Inc*., 401 F.3d 316, 321 (5th Cir. 2005). While the Court should go beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of certification issues, the Court should not, during class certification hearings, conduct mini-trials on the merits of the class or individual claims. *Id.; see Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 395 (5th Cir. 2007) (Dennis J., concurring) (Courts are not permitted to go beyond the issues necessary to class certification and rule on the merits of the plaintiffs' claims).

Notwithstanding the evidence presented by Welch, Welch's conclusion that all of Atlas's shingles sold during the pertinent times were so defective as to merit rescission of the sales relates directly to the merits of Welch's and the putative class members' redhibition claims.[28]   Should the Court adopt Welch's "legal" conclusions as to the existence and severity of the defects in Atlas's shingles, the Court would be making an impermissible

---

[28]Rec. Doc. no. 31, p. 10.  Roger Reeves ("Reeves") testified on behalf of Atlas that the problems with Atlas's shingles was intermittent, considering the shingles he has inspected have had varying degrees of metal.  Rec. Doc. No. 22-2, p. 28.  Reeves further testified that there are many roofs that have Atlas shingles manufactured during the pertinent times that have exhibited absolutely no rusting.  *Id.* at 29.  Some roofs would have one shingle that might have rusted, while other roofs might have two or three dozen shingles that rusted. *Id.* at 21; *see also* Rec. Doc. No. 13-5, pp. 21-27 (Glynese Ward testifying that every claim submitted to Atlas was different.  Some roofs would be covered with rust, while others would only have some areas affected.).

preliminary determination on the merits that may substantially prejudice Atlas, as the adoption would not be accompanied by the traditional rules and procedures applicable to civil trials. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178, 94 S.Ct. 2140, 2152-53, 40 L. Ed. 2d 732 (1974).[29]

The Court must consider how a trial on a classwide redhibition claim would proceed, and in so doing, the Court must consider all remedies available, not simply the remedy sought by Welch, to class members in the event Welch establishes Atlas's liability. As stated previously, in addition to rescission of the sale, Louisiana's law of redhibition entitles a plaintiff to a reduction

---

[29]In *Eisen*, the United States Supreme Court provided a detailed explanation as to why a court may not inquire into the merits of a claim sought to be certified.

> We find nothing in either the language or the history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained. This procedure is directly contrary to the command of subdivision ©)(1) that the court determine whether a suit denominated a class action may be maintained as such '(a)s soon as practicable after the commencement of (the) action....' In short, we agree with Judge Wisdom's conclusion in *Miller v. Mackey Int'l*, 452 F.2d 424 (5th Cir. 1971), "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Additionally, we might note that a preliminary determination of the merits may result in substantial prejudice to a defendant, since the necessity of it is not accompanied by the traditional rules and procedures applicable to civil trials. The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant.

*Eisen*, 417 U.S. at 178.

17

of the purchase price, should the alleged defect simply diminish the product's usefulness.  La. Civ. Code Ann. art. 2520.  Welch only attempts to demonstrate how the present class may be maintained if rescission is the proper remedy.[30]  As such, the Court must, absent the presumption of Atlas's liability and the severity of the alleged defect, consider how the class may be maintained under Article 2520.[31]

After review of the substantive law applicable to this case, the Court finds that a class action based on redhibition claims, where Louisiana law allows for both rescission and reduction, will likely be predominated by individualized issues.  Should the Court determine that not all Atlas shingles manufactured and sold during the pertinent times contained a redhibitory defect, the Court would

---

[30]Welch believes that Atlas's answer to interrogatories 3 & 4, *see* Rec. Doc. Nos. 31-10,11, stating that Atlas manufactured and distributed 2.7 million defective shingles constitutes a judicial admission that all shingles manufactured and distributed during the pertinent times contained metal and were defective. The Court notes, however, that in responding to these interrogatories, Atlas objected to the interrogatories to the extent they implied that Atlas's shingles were defective.  Considering the fact that Atlas objected to the inference that its shingles were defective, the Court finds that whether all shingles manufactured and sold during the pertinent times were defective remains a disputed fact.  *See* Rec. Doc. No. 35, pp. 3-4 (Atlas admits that it produced 2.7 million shingles during the pertinent times, but it does not admit that all of these shingles were defective).

[31]*See also* Rec. Doc. No. 31, p. 10.  The Court recognizes that Roger Reeves has testified that any amount of metal in a shingle creates a problem.  Rec. Doc. No. 31-2, p. 34, ll. 13-15.  However, Reeves also testified that some roofs may have had only one shingle with the affected metal granules. Rec. Doc. No. 22-2, p. 21, ll. 3-10 ("Some of them had one shingle that might have rusted, and some of them might have had two or three dozen that we've had rust streaks"); *see also* Rec. Doc. No. 22-2, p. 28, ll. 10-14 ("Some shingles would have one speck of metal in an entire shingle; some would have 10 or 12.  So that's an indication of an intermittent problem").  Such testimony creates the possibility that, subsequent to a full trial on the merits, the Court may find that not all shingles were defective and rescission of the sales may not be the only proper remedy.

be forced to make individualized determinations as to Atlas's liability to each class member.  This would likely require either the inspection of each class member's home or the submission of sample shingles from each class member's home.[32]  In such a case, the determination of Atlas's liability would clearly result in the predominance of individualized issues over issues common to the class.

Should Welch prevail on this issue, the Court will likely be required to make individual determinations as to the extent of Atlas's liability.  In the event a redhibitory defect is established, the Court will still be required to determine whether each class member's roof possesses a defect that entitles that class member to a rescission of the sale or a reduction of the purchase price.  Determining the remedy available to each class member would cause individual issues to predominate over questions common to the class.

In the event Welch establishes liability and the extent thereof, the Court will be required to calculate the amount of damages owed to each class member.  While the Court recognizes that a wide disparity among class members as to the amount of damages suffered does not, in and of itself, necessitate denial of class certification, class treatment is nevertheless unsuitable when the

---

[32]Roger Reeves declared that "Atlas does not normally have a record of any particular end-consumer of Atlas products, unless Atlas receives contact from those consumers."  Rec. Doc. No. 22-2, p. 3, para. 9

calculation of damages "is not susceptible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is clearly inadequate." *Bell Atlantic*, 339 F.3d at 306-07.

Welch's proposed method of calculating class damages entails each class member submitting invoices from the purchase of Atlas shingles.[33]   However, this calculation is based solely on the rescission theory of recovery.  The Court must consider whether a mechanical or formulaic calculation is applicable when considering both rescission and reduction as viable remedies.

Considering the individualized nature of liability and the extent thereof, any formula for calculating damages in this case would likely require the Court to separate the class members entitled to rescission from the class members entitled to reduction and, thereafter, make case-by case determinations as to the amount by which the Court should reduce the purchase price for those members entitled to reduction.   In essence, this would be no formula at all.   The Court would still be required to conduct "minitrials" of an overwhelmingly large number of individual claims in order to determine the damages owed to each class member.   As such, the need to calculate individual damages clearly defeats predominance.  *Id.*

---

[33]Rec. Doc. No. 31, p. 16.  Welch suggests the purchase price stated on the invoice shall permit the Court to calculate the total amount of damages suffered and to disburse those damages accordingly.  *Id.*

The Court must also consider whether each class member's claim is barred by prescription.[34]  "The manufacturer of a product is presumed to have knowledge of any defect in what he makes; therefore a claim is timely if [one year] has not elapsed since the discovery of the [defect]." *Div. Place P'ship v. Carl E. Woodward, Inc.*, 806 So. 2d 912, 915 (La. App. 4 Cir. 2002); La. Civ. Code. Ann. art. 2534(B).  "The manufacturer has the burden of proving by a preponderance of the evidence that the purchaser discovered the [defect] more than one year prior to filing the suit." *Id.*[35]

Welch argues that all putative class members have yet to discover the alleged defect, i.e. excessive metal granules, in their shingles because the defect is undiscoverable by mere observation.[36]  However, there is a likelihood that at least some putative class members have discovered that their Atlas shingles

---

[34]U.S. Circuit Courts of Appeals are split on the issue of whether individualized statute of limitations determinations per se mandate denial of class certification. However, courts are in agreement that affirmative defenses, such as statute of limitations, are factors to be considered in class certification hearings.  *See Mulford v. Altria Group, Inc.*, 242 F.R.D. 615, 629-30 (D. New Mexico 2007).  "While the existence of affirmative defenses that may require individualized evidence does not compel a finding that individual issues predominate over common ones, it does weigh against class certification." *Id.; see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) ("Although a necessity for individualized statute-of-limitations determinations invariably weighs against class certification under Rule 23(b)(3), we reject any per se rule that treats the presence of such issues as an automatic disqualifier . . . .  As long as a sufficient constellation of common issues binds the class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3)"); *Gunnells v. Health Plan Servs., Inc.*, 348 F.3d 417, 438 (4th Cir. 2003) ("Regardless of other courts' interpretations of Rule 23, we have flatly held that 'when the defendants' affirmative defenses . . . may depend on facts peculiar to each plaintiff's case, class certification is erroneous.'") (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998).

[35]According to Atlas, the timeliness of each class member's redhibition claim is one in a number of issues requiring individualized determinations that will predominate over issues common to the class.  Rec Doc. No. 22, p. 20.

[36]Rec. Doc. No. 31, pp. 14-15.

were defective by virtue of an outward manifestation, i.e., rust. As such, determining the timeliness of the putative class's redhibition claim would inevitably require the Court to determine the point at which each class member became or should have become aware, if at all, of the alleged defect in their shingles.[37]  Such individual determinations would clearly predominate over issues common to the class.  Considering the foregoing, the Court finds that Welch has failed to carry his burden of proving that the issues common to the class will predominate over individual issues.

### 2. *Superiority*

The Court must consider the following factors when evaluating whether Welch has satisfied the superiority requirement of Rule 23(b)(3):  (1) the class members' interest in individually controlling their separate actions; (2) the extent and nature of existing litigation by class members concerning the same claims; (3) the desirability of concentrating the litigation in the particular forum; and (4) the likely difficulties in class management.  *Turner*, 234 F.R.D. at 610; *see also* Fed. R. Civ. P. 23(b)(3).  The key inquiry is whether the class action format "is superior to other methods of *adjudication*."  *Id.; see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 186 (3rd Cir. 2001) (Superiority calls for a determination that a class

---

[37]*Goodman v. Roberts*, 587 So. 2d 807, 810 (La. App. 3 Cir. 1991) (explaining that prescription begins to run at the point at which the purchasers knew or should have known that they had a reasonable basis to pursue a claim against defendants); *Beth Israel v. Bartley, Inc.*, 579 So. 2d 1066, 1072 (La. App. 4 Cir. 1991) (Prescription does not commence to run until the plaintiff has actual or constructive knowledge of the tortious act, the damage caused, and the causal relationship between the tortious act and the damage).

action is the best method of achieving a "fair and efficient adjudication of the controversy").

Welch explains that there are only three other lawsuits that have been filed in connection with Atlas's allegedly defective shingles.[38]  As such, Welch asserts that there has not been a substantial amount of litigation regarding Atlas's shingles and a class action is the "only method" by which the tens of thousands of remaining class members may effectively seek compensation.[39]

Welch also argues that concentrating the putative class in a single forum is desirable, as this Court has already presided over other cases against Atlas alleging similar conduct and all new cases would likely be removed to or transferred to this Court as related.[40]  He urges that subsequent to class certification, this case would likely be resolved by summary judgment motion practice and those issues left unresolved by motion practice could be resolved at trial, during which the testimony of class members will not be required.[41]

The Court finds Welch's arguments concerning the superiority of a class action unpersuasive.  As previously stated, this case would likely require the Court to make case-by-case determinations as to Atlas's liability, the extent of Atlas's liability, the damages owed to each class member, and the timeliness of each class

---

[38] Rec. Doc. No. 13-3, p. 24.

[39] *Id.*  (speaks to the second factor necessary to satisfy superiority).

[40] *Id.* at p. 25.

[41] *Id.*

member's claim.  Such determinations would undoubtedly render this case unmanageable as a class action because of the need to produce evidence unique to each class member.[42]  *See, e.g., Masonite*, 170 F.R.D. at 425-26 ("Individual questions of law and fact overwhelm common questions, and class litigation would easily become unmanageable and less efficient than litigation involving state-wide (or smaller) classes . . . ."); *Newton*, 259 F.3d at 191 (holding that proof of plaintiffs' injuries and litigating the defenses available to defendants would present insurmountable manageability problems for the district court).  The Court finds that a class action is not the superior method for adjudicating the putative class members' claims.

In summary, individual determinations of liability, the extent of that liability, damages, and the timeliness of each class member's claims will predominate over any issues common to the participating class members.  Such individual determinations clearly indicate that a class action is not the superior method of fairly adjudicating the class members' claims.  Therefore, the Court finds that Welch's action is not appropriate for class certification pursuant to Rule 23(b)(3).

Accordingly,

**IT IS ORDERED** that the motion for class certification filed by

_____

[42]If Welch correctly estimates that there are tens of thousands of putative class members, the Court would be required to review evidence unique to each of those class members.

plaintiff, Patrick G. Welch, on behalf of himself and others similarly situated,[43] is **DENIED**.

New Orleans, Louisiana, November_____2nd_____ , 2006.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

_____

[43]Rec. Doc. No. 13.